Good morning, Your Honors. May it please the Court, I'm Franklin Ferguson on behalf of the Appellant, Ms. Cross. This case centers, Your Honor, about, Your Honors, around the issue of whether or not a company has the right to determine, subjectively, if it will grant an employee rights under the California Family Rights Act and the Family Medical Leave Acts. If a right, such as the CFRA, is to be enforced, it has to be done so liberally. The purpose of the Act is to allow a person, such as Ms. Cross, to be able to take advantage of time necessary to care for themselves in the case of a serious health condition. The facts do not have any question as to whether or not Ms. Cross was qualified under the CFRA. The issue boils down to whether or not United had a right to determine when and if she could use the CFRA leave. Where did United go wrong? Several places, Your Honor. First, when, in April 2002, Ms. Cross came to United and indicated that, I have come from the hospital, an overnight stay. By definition, a serious health condition has been identified. They showed her, she showed them, as I understand it from the record, she presented them with a copy of her discharge, a statement from Cedars-Sinai. That's correct, Your Honor. Indicating that she'd been in the emergency room overnight. She did, Your Honor. And that specifically triggers the obligation... To have her, to be given credit for her absence under the Family Medical Leave Act? Your Honor, she did not mention the Family Medical Leave Act. And here is the essence of the case. She gave them notice under Code of Regulations 7297.1. Notice, requesting a leave, is the equivalent of giving notice for the need for the leave. The onus is on the employer to be able to listen to the case and be able to then ascertain, is she qualified? If so, the employer has to then give the employee notice about her rights under the FMLA and CFRA. So here she presented them with a document from the hospital indicating that she had been in there overnight for an emergency condition. They were aware of that, but they didn't... And she didn't say to them on the next day or whenever it was, you know, how about Family Medical Leave Act? And they didn't say anything to her. So then what happened? Later on, Ms. Cross, on her own, finds out about FMLA. And she does ask for not only current acknowledgement in November 2002 of that illness, but retroactive designation of the April 2002 illness as being FMLA approved. And both were, well, November was approved. Retroactive was denied. The key, I think, Your Honors, is 7297.4 of the California Court of Regulations talks about the notice required from an employee to the employer that triggers FMLA responsibility. And under the section A sub 4, when there's an emergency or unforeseeable circumstance, in April of 2002, Ms. Cross had not yet been diagnosed by the doctor with a condition she'd had for many years. It hadn't been determined what it was. So she didn't know herself to be able to tell her employer, hey, I need time off intermittently. I need to see my doctor. I need to receive care on a regular basis. So it was clearly, as Section 4 says, unforeseeable circumstance, and employers shall not deny the leave under those circumstances. The only time that you don't have to give advance notice is when it's unforeseeable. Well, clearly, until May of 2002, Ms. Cross did not know specifically what her serious health condition was. Once she did know what it was, at that point in time, under, again, Section 4, not only should the April of 2002 leave have been designated as FMLA approved, but the subsequent ones that were related. And the record indicates, Your Honor, that United did not dispute that there were several occurrences which were, in fact, related to the May of 2002 diagnosis. Do you need the subsequent events after April to establish a violation of the FMLA? I'm sorry, Your Honor. Do you need the subsequent absences after April to establish a violation of the FMLA? I'm listening, Your Honor. For the California family? No, Your Honor. Would you need it to establish damage or causation, you know, injury? No, Your Honor, because her injuries flow from the non-recognition of the FMLA leave in April of 2002, and that impacted her ability to be on a list for layoff. In other words, had she not had that layoff... Let me just, I just want to be sure I understand. If she had been off one day, came in, gave FMLA notice herself, they didn't treat it as such, and then that was the only occasion of her being off, and they cited her absence on that day in the reason for putting her on the furlough list, would that be, in and of itself, enough to trigger an FMLA violation? Absolutely, Your Honor. Okay, and then what would be her relief? Then what is the harm? The harm is the fact that they cited that as one of a number of factors for putting her on the list? Certainly, Your Honor. The harm ultimately was she lost her job, because it... Even though it was, you know, 1% of a whole range of reasons for her being on the list. Well, Your Honor, an unexcused absence was one of the factors they considered to be very, very important in determining whether or not the person would be laid off. Okay, and that's clear, that's all been determined on the record at this point, or do we have to have it go back to be considered? Well, Your Honor, we brought a motion for some indication on that issue, because essentially when Ms. Tobialski was given the information that Ms. Cross gave to her about her qualifications and did not, A, tell Ms. Cross about her federal rights and, B, when they ultimately did not even retroactively acknowledge that, that was a violation per se, and it directly led to her being terminated, because she ultimately, that was one of the factors that they utilized. Had she not had that absence counted in that manner, she would have still been there post the termination. Your Honor, I'd like to reserve, if it's possible, two minutes. Well, in April 2002, that's when the discharge paper was handed to, apparently, the clerk, and if you take that time as an alleged violation, isn't it a question of fact as to whether or not that actually led to the termination? Because it wasn't the sole reason for the termination, it was one of the many reasons. So isn't it a question of fact as to, assuming it was a violation, that that actually led to her furlough? Well, Your Honor, the FMLA is violated when leave is not granted upon request. But then what's the damages? In that instance, it would be nominal damages at that point. However, in this case, in this case, Your Honor, it was one of the factors that Mr. Kivett specifically cited as one of the rationales for her being selected for termination, for furlough. One of the reasons. Yes, one of the reasons. And again, Your Honor, when you're talking about one or two or three factors that lead to termination, one is a big factor. Well, is it possible, and maybe this question is more appropriately directed to the opposing counsel, but is it possible, let's assume there's a violation of the FMLA, is it possible that in measuring the amount of damages that the trier of fact could determine that no matter what, the FMLA didn't play a significant part in the ultimate decision to let her go, and therefore her damages are nominal? She would have been on that furlough list no matter what. Well, the trier of fact could make that determination, Your Honor, but I think both questions have led to the conclusion that the trier of fact should have got that question, which is why we're here. The trier of fact never got a chance to make the determination at all, and that's why she should have gotten that opportunity. Briefly, though, in the event that the FMLA was violated, you also have that factor as a key cog in the determination, well, was there retaliation? Was there retaliation? Her having mentioned the fact that, hey, I've been treated improperly led to Kivitz's response. Let's see what time is up, Your Honor. I'll give you some time on rebuttal. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Dominic Messija. I'm here representing Appelese United Airlines, Lynn Kivett, and Terry Tobiaski-Miyazga. In January of 2003, 11,000 United Airline employees, including the appellant, Ms. Cross, were furloughed as a result of the financial crisis that beset the airline industry following the September 11th attacks. That was not the first furlough in that series of furloughs. The first one actually was in October 2001, and notably, Ms. Cross was not part of that furlough. That's important for two reasons. First of all, it demonstrates that had United wished to retaliate against it. Focus on the FMLA, since that's what we've been talking about. This issue of if United folks should have advised her of the FMLA status and should have listed her for that reason and not been able to use that as a ground for putting her on a list, why isn't that the violation, and then why isn't the issue, if there is an issue beyond that, what effect that did in having her go on the list when she did come on the list and being reached when the decision to furlough the employees was made? Yes, Your Honor. There was no FMLA violation here, and there are two principal reasons for that. First of all, Ms. Cross never expressed a desire. She doesn't have to. It's up to the employer. Presented with the facts, that's what the FMLA does. It puts the burden on the employer when confronted with an employee who is needing leave time to be sensitive to what the nature of it is. And you're suggesting when she comes back from an emergency room, presents the discharge paper that human relations people are trained to say, well, we understand that this may well be FMLA? It is correct, Your Honor, that an employee is not required to expressly mention the FMLA, but under the code and under the regulations, the employee must express some desire for leave, and that wasn't done in this case. But even if it had been, United had already satisfied its obligation to alert Ms. Cross of her rights under the FMLA by virtue of its employee handbook. The employee handbook she received, it contained all of the information regarding her rights under the FMLA, and that's under 29 CFR 825.301. The employer satisfies its obligation to notify the employee if it includes that information under the FMLA in its handbook. If it does that, it does not have to notify each employee every time there is an absence that could possibly trigger the FMLA. Which is the regulation that says that? It's 29 CFR 825.301, and that's also identified in the case law case which was cited by both sides, which was the Conoscenti case. I thought we said something different in the name of our case. It's slipping my mind. Okay. I'm sorry, what was the regulation? I want to make sure I look at it. 29 CFR 825.301. And the regulation has two components. First, it says if the employer has a handbook, FMLA information must be included therein, and B, if there's a handbook with information included therein, the employer satisfies its notification right to its employees and doesn't have to give that notice each and every time there's an absence potentially triggering the protections of the act. Even getting beyond that, though, Your Honors, there's another reason. Let's go back again. What was that regulation again? I found my bricks. 29 CFR 825.301. 301. Okay, hold on. And that's within our brief as well, Your Honors. 301. 301. While they're looking that up, let me ask you, do the facts in this case indicate that that employee handbook was provided to the defendant and there was any documentation that she read? Because often in the employee context, a handbook when you're employed is handed to you, but you also initial that you've received it and you've read it. Was there anything done in that situation in this case? Indeed, Your Honor. The appellant actually brought a claim in her complaint based on the handbook itself, acknowledged in the factual record that she had received the handbook, was familiar with its provisions, and she relied in lower court as well as during her employment on those provisions in the making of her claim under the Family Medical Leave Act. So, indeed, that was provided, it was received, and it was there. Even if we get past that, however, there's still no violation of the FMLA because retroactive designation under the CFR is wholly discretionary by the employer, and that's what the district court found. Okay. Now, I will acknowledge that I'm just sort of looking at this regulation a little more, you know, right now I'm kind of on the spot, but I fail to see where it says that if they have a handbook and they provide the handbook, assuming there's evidence in the record here that they had given her a copy of the handbook and the handbook contained FMLA advisements, I fail to see in this regulation where it says if you do that, you don't have to advise them of their FMLA rights after they come back from a situation like Ms. Cross had here in April of 2002. There's a number of subsections. There's A, B, C, D. It goes all the way down to F. If you could point to me the one you're relying on. I believe that the next step in the analysis is within the case law, Your Honor, regarding the handbook. No, no, you said that it was in the regulation. So I want you to tell me where in the regulation this statement is. I believe it's in subsection 2, Your Honor. Okay, that's subsection 2 of A? Correct. The little subparagraph there? Correct. It says if such an employer does not have written policies, manuals, or handbooks. Correct. If the employer does not, then the employer must provide the written guidance to employees in the form of a notice each time notice of a need is given. I'm paraphrasing now. It's in the subsequent, the first sentence and the second sentence. And that's explored further in the Conoscenti case, which cites to that code section and states that that is, in fact, the proposition that it stands for. Is the Conoscenti case one of our cases? It is not, Your Honor. The Conoscenti case is a Third Circuit case. Okay. Now, the Conoscenti, I want to come back to this notification, moving away from whether she had notice. She comes about out of the hospital. She provides to the HR folks her discharge paper. Why did she do that? As an explanation for the absence is what the record evidence will show. All right. So in Conoscenti, in footnote 6, it says, in this case there's no dispute that Conoscenti was an eligible employee or that his injury qualified as a serious health condition. Moreover, as the district court noted, it is undisputed that Conoscenti fulfilled his duty to notify under the FMLA by informing TOC and G of his injury and the need for time off within two days of his accident. Okay. Now, she went into the emergency room, right? Correct. All right. So she didn't have any advance notice that she could come in and say, I'm going to need this time off to go to the emergency room. When she comes out, she gives HR the statement of why she was in there. Did you dispute that qualifies as a serious injury? For these purposes, we don't dispute that. So now what more does she have to do? She now has to say something to say that I was off, I want leave. It can't be serious. There doesn't have to be any request for FMLA. So UAL knew at that point that they had an FMLA leave situation, and they didn't designate it as such, correct? Correct, Your Honor. And therefore, when they used that off period of time as part of the reason for putting her on the furlough list, why isn't there now an issue as to whether that FMLA violation is related to her losing her job? Two reasons, Your Honor. First of all, under 29 CFR 825.208, subsection E1, United had the discretion. Well, okay, that's your argument. But CAFRA itself says, the CFRA says, the employer shall not deny. She's got a claim under FMLA CFRA, right? I believe that this appeal and the motion was brought under FMLA. The regulations paralleled each other. All right. And so I understand that United makes the argument that you somehow have the discretion under FMLA not to designate, not to treat what is a serious injury as, in fact, an FMLA qualifying leave. So let's suppose you lose on that. Then is the issue whether or not she suffered prejudice from the failure to designate? Certainly. And that's the second reason why there's still not any violation of the statute, because irrespective of this absence, she would have been furloughed. How has that been determined? The record evidence, there's no evidence in the record that she would have retained her job had that absence not been counted. And she has the burden of proving that? Well, certainly she has the burden in her prima facie case of demonstrating that the furlough was a but-for cause. The but-for cause? It was listed. It was given as a reason, wasn't it, for her being on the list? It was one of the factors that calculated her total, which placed her on the furlough list. But there's no evidence in the record that she would have retained her job had that not been counted. That might be a question of fact, though. By the way, I want to go back to this regulation, because I don't, you know, if you read it a little bit closer, it says this notice shall be provided to employees each time notice is given pursuant to Paragraph B. And if you go to Paragraph B, it talks about this sort of broad notice that needs to be given at least once every six months. It doesn't talk about each time an employee is, like in the situation here where somebody goes out on medical, an emergency situation. This is a different kind of notice. I would tend to agree with Your Honor that the CFR section is less than clear, which is why the Conaschenti case helps to clarify the meaning there. And what Conaschenti says, if I may, is that it cites to that section 301A1, and then states if the employer does not provide such a handbook, such information must be provided when an employee requests leave. And it cites to 825301A2. We said in Buckhelder v. America West Airlines that 29 CFR 825.302 subsection C, the FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of need for MLA leave. And that's what happened here. Correct, Your Honor. And even assuming that Ms. Cross gave proper notice, and it seems like the court is inclined to accept that, United Airlines satisfied its obligation. We go on to say, in short, the employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for MLA protection. Correct, Your Honor. As United was here, and in fact had satisfied its obligation to notify her, and indeed granted her request for leave at a later point in time, stretching back not as far back as the absence in April, but indeed as far back as May, and designated the subsequent absences as protected leave, as it should have. Okay. Any more? All right. I'm out of time, Your Honors. Thank you. Overtime, but that was at our discretion, so we'll give your colleague a little more time, therefore. We're not complaining. Interesting case, and we need the argument. We don't let it run on unless we're interested in hearing. I appreciate the opportunity, Your Honor. Thank you. Thank you, Your Honor. Your Honor, this is a CFRA case, and California has gone above and beyond the federal regulations in terms of not only acknowledging when an employer must acknowledge the FMLA leave, but also retroactively applying it. That's very critical. I want to just briefly tie in as well. Even if you have a nominal FMLA violation or CFRA violation, how does that play into this case? Well, Mr. Kivitt is the person who denies Ms. Cross ultimately the retroactive leave and also is the person who earlier on had given her a final notice concerning her having complained about sexual harassment, him taking her off of work without pay, investigating the matter, and then giving her discipline at the end of the day. So this person is a key critical factor, a key critical player in the analysis. The TRIFAC very well may believe there's a link between his determination as to Ms. Cross being ultimately furloughed and his role in the final notice, his role in refusing to acknowledge the FMLA leave, and his role in not giving Ms. Cross retroactive leave. If a company is allowed, as United is claiming in this case, to say, you know what, we gave you a form to place book when you came in here. That's not what FMLA is about. It's about saying, look, when the HR knows that a person comes in and has given you information about a serious health condition, the employer now has an obligation to educate the employee even further about FMLA leave. Otherwise, why have it? Why even have it? Why even have persons being able to take FMLA leave if they don't know about it? And who is in a better position to do that, the employee or HR, which has attorneys at its disposal, which has the ability to sit back and read these regulations with care and apply them? So I would urge the Court to respect the congressional intent for FMLA leave, and thank you for your time. Thank you, both counsel. Thank you. The case argued is submitted.
judges: Fisher, Paez, Lorenz